UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CRYSTAL M.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 3:18-CV-05528-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

This is the second judicial review of Defendant's determination that Plaintiff is not disabled. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. As discussed below, the undersigned agrees that the ALJ erred; the ALJ's decision is reversed and remanded for an award of benefits.

## I.    ISSUES FOR REVEW

1. Did the ALJ err in evaluating the opinions of Jeffrey Patterson, M.D., Julian Arroyo, M.D., and William Morris, M.D.?
2. Did the ALJ rely on an impermissible "sit and squirm" test when evaluating Plaintiff's symptoms?
3. Did the ALJ err in evaluating Activity Prescription Forms issued by the Washington State Department of Labor and Industries?
4. Did the ALJ err in finding Plaintiff capable of performing her past relevant work?
5. Did the ALJ adequately account for Plaintiff's impairments when assessing the RFC?

## II. FACTUAL AND PROCEDURAL HISTORY

On November 5, 2010, Plaintiff applied for disability insurance benefits, alleging a disability onset date of October 30, 2008. AR 25, 151-57, 816. Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2010, making the period between Plaintiff's alleged onset date and her date last insured the relevant period. AR 27, 819.

The first hearing was held before Administrative Law Judge ("ALJ") Cynthia D. Rosa on May 8, 2012, after Plaintiff appealed the denial of benefits. AR 43-80, AR 25, 103-05, 107-08, 816. In a decision dated May 25, 2012, ALJ Rosa determined Plaintiff to be not disabled. AR 22-37, 867-82. The Social Security Appeals Council denied Plaintiff's request for review on October 18, 2013. AR 1-6, 888-93.

Plaintiff appealed to the United States District Court for the Western District of Washington, which affirmed the ALJ's decision on September 9, 2014. AR 894-900, 904. Plaintiff appealed the District Court's ruling to the United States Court of Appeals for the Ninth Circuit on November 6, 2014. AR 904.

On July 30, 2015, Plaintiff and the Commissioner of Social Security filed a motion for an order of remand and issuance of a mandate based on the parties' stipulation. AR 913-18. The motion provided that on remand, the Appeals Council should instruct the ALJ to:

> give [Plaintiff] an opportunity for a new hearing; reevaluate the medical opinion evidence, including the State agency opinions of Dr. Stevick and Dr. Ignacia, as well as the conclusions of Dr. Arroyo; reconsider the RFC finding; issue a step four finding in compliance with SSR 82-62, including a finding of fact regarding how the claimant's past work was actually performed, consideration of the claimant's own statements of how she performed her past work, and consideration of the Washington State Department of Labor and Industry report on the claimant's former job; and obtain supplemental testimony from a vocational expert.

AR 914.

The Court of Appeals granted the motion and issued a formal mandate pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure. AR 911, 912. On August 31, 2015, the Appeals Council vacated the ALJ's determination; the Council remanded for further administrative proceedings consistent with the instructions contained in the stipulated remand order. AR 919-24. The Appeals Council also ordered the ALJ to correctly attribute a medical opinion to Jeffery Patterson, M.D. rather than Julian Arroyo, M.D. AR 922.

On August 31, 2016, ALJ Cynthia D. Rosa held another hearing. AR 853-66. On February 22, 2017, the ALJ again found that Plaintiff was not disabled between her alleged onset date and her date last insured. AR 813-34. On March 23, 2017, after the Appeals Council declined to assume jurisdiction, AR 806-12, the ALJ's second decision became the final decision of the Commissioner. Plaintiff appealed to this Court and seeks a finding that Plaintiff was disabled. Dkt. 10.

### III. STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 3

decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

IV. DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 404.1520. The ALJ assesses the claimant's RFC to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, at step five to determine whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(e),

A. Whether the ALJ properly evaluated the medical opinion evidence

Plaintiff maintains the ALJ failed to properly evaluate opinion evidence from Dr. Patterson (the examining physician who evaluated Plaintiff for the Washington State Department of Labor and Industries), Dr. Arroyo (Plaintiff's treating specialist physician for her neck condition), and Dr. Morris (Plaintiff's treating specialist physician for her shoulder condition and carpal tunnel condition). Dkt. 10, pp. 6-15.

In assessing an acceptable medical source, an ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

1. Dr. Patterson

Plaintiff argues that the ALJ failed to properly assess an opinion from examining physician Dr. Jeffrey Patterson. Dkt. 10, pp. 7-9.

On March 11, 2010, Dr. Patterson examined Plaintiff at the request of the Washington State Department of Labor and Industries. AR 312-28. Dr. Patterson's examination consisted of a clinical interview, a detailed review of the medical record, and a physical examination. Based on this evaluation, Dr. Patterson opined that Plaintiff could work at a sedentary occupation with a lifting requirement of less than 20 pounds below shoulder level. AR 327. Utilizing the Guides to the Evaluation of Permanent Impairment, Dr. Patterson assessed Plaintiff as having a 15 percent impairment in her upper left extremity. AR 327.

In an estimate of physical capacities attached to his report, Dr. Patterson opined that Plaintiff could seldom (meaning between 1 and 10 percent of the time) lift and carry between 11 and 20 pounds, frequently lift and carry between 6 and 10 pounds, and continuously lift and carry up to 5 pounds below shoulder level. AR 311. Dr. Patterson further opined that Plaintiff could never reach above shoulder level at work. AR 311. Dr. Patterson further concluded that following a left shoulder rotator cuff repair and decompressive acrominoplasty, Plaintiff "never made a complete recovery clinically", although the procedure helped reduce her pain. AR 326.

The ALJ summarized Dr. Patterson's opinion and assigned it "little weight", reasoning that:

> Dr. Patterson's opinion is not supported by his examination of the claimant. Dr. Patterson noted that the claimant walked without difficulty and was able to sit comfortably during the interview and intake. Her motor strength testing was normal. She told him she was currently working as a real estate agent. His opinion is also not supported by the other medical evidence of record, that shows her strength is consistently intact, or the claimant's activities of daily living from the relevant time period, which included international travel, long walks with friends, grocery shopping, cooking, and independence in activities of daily living.

AR 825, 830. The ALJ has not provided specific, legitimate reasons for rejecting Dr. Patterson's opinion in favor of the opinions of non-examining state agency consultants Drew Stevick, M.D. and Olegario Ignacio, Jr., M.D. The ALJ has not, in rejecting Dr. Patterson's opinion, considered those portions of his evaluation directly relevant to Plaintiff's shoulder impairment.

First, the results of Dr. Patterson's examination are not inconsistent with his assessment concerning Plaintiff's shoulder limitations. Plaintiff exhibited discomfort in her left shoulder during an empty can test and had persisting pain with an O'Brien's modification. AR 325. Plaintiff also exhibited discomfort following a positive empty can test on her right shoulder, but without subdeltoid radiation or rotator interval. AR 325-26. Plaintiff's left shoulder was tender to palpitation over the area of a prior resection arthroplasty of the distal clavicle and of the rotator cuff interval. AR 326. Plaintiff's right shoulder also exhibited some tenderness to palpitation at the right acrominoclavicular region and at the posterior shoulder in a more diffuse manner. AR 326. Dr. Patterson noted that the Spurling's test caused ipsilateral discomfort bilaterally, but that Plaintiff stated that it was a different kind of discomfort than she experiences when she has focal shoulder pain. AR 326.

Second, Dr. Patterson also had the opportunity to review Plaintiff's medical records dating back to 1983 and provided a detailed analysis of these records in his evaluation. AR 315-24. In assessing Plaintiff's functional limitations, Dr. Patterson relied on the results of his own examination, and the longitudinal medical record.

Third, the ALJ cites Dr. Patterson's notation that in March 2010 Plaintiff was "currently employed at the job of injury" as evidence that Plaintiff was working as a real estate agent long after her alleged onset date. AR 314, 830. The ALJ also cites evidence from after the period at issue indicating that Plaintiff resumed working after her date last insured. AR 827.

A finding that a claimant was still working during a period when they were alleging disability may serve as a specific, legitimate reason for rejecting the opinion of an examining physician. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (An ALJ provided specific and legitimate reasons for rejecting the opinion of a treating psychologist when she identified a contradiction between the doctor's statement that Plaintiff was unemployable and Plaintiff's acknowledgment that he was continuing to work full-time). Yet, Plaintiff testified that her income from this period came from referrals to her former realty company -- rather than (as the ALJ erroneously determined) full-time work as a realtor. AR 70-71. Further, the ALJ found that Plaintiff had not engaged in substantial gainful activity between her alleged onset date and her date last insured. AR 819-20.

Fourth, the ALJ's reference to Plaintiff's activities of daily living, such as international travel, long walks with friends, grocery shopping, and cooking, is not a specific, legitimate reason to discount Dr. Patterson's opinion. An ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999). However, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits); *see also Vertigan v. Halter*, 260

F.3d 1044, 1050 (9th Cir.2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."), citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).

Further, the ALJ's reliance on Plaintiff's activities of daily living to discount Dr. Patterson's opinion runs contrary to the remand instructions of the Appeals Council, which explicitly noted that activities such as traveling, walking, attending church, occasionally shopping and cleaning did not contradict an opinion from Dr. Arroyo concerning Plaintiff's shoulder impairment because they did not necessarily involve repetitive reaching or working above the shoulder. AR 921-22.

On remand, the Appeals Council also ordered the ALJ to correct an error and attribute a medical opinion to Jeffery Patterson, M.D. rather than Julian Arroyo, M.D. AR 922. The opinion in question was the estimate of physical capacities attached to Dr. Patterson's March 11, 2010 report. AR 311. The ALJ assigned "partial weight" to this opinion, "regardless of whether it was offered by Dr. Arroyo or Dr. Patterson", giving "great weight" to the portion of Dr. Patterson's opinion:

> that is consistent with the residual functional capacity described in finding five, because it is supported by the medical record as a whole, that shows the claimant complained of chronic pain however on testing, her strength remained intact, and the record that shows the claimant rarely took pain medication during the relevant time period. Little weight is given to his opinion the claimant could seldom lift and/or carry up to 20 pounds, because this is inconsistent with her strength testing. Little weight is given to the opinion in terms of postural activities because this opinion is brief, conclusory, and not supported by the record, which does not show the claimant suffered from any severe lumbar spine or lower extremity impairments. Little weight is given to the opinion in terms of reaching, because it is inconsistent with Dr. Arroyo's treatment notes showing her shoulder range of

motion was grossly intact. Also, the undersigned finds that due to her reports of fatigue, she should have avoided hazards.

AR 829-30.

To the extent that the ALJ assigned great weight to the portion of Dr. Patterson's opinion that was consistent with the existing RFC and the reasoning behind that RFC, the ALJ erred. The ALJ must consider medical evidence in assessing the RFC and cannot discredit such evidence because it is inconsistent with the assessed RFC. *See Laborin v. Berryhill*, 867 F.3d 1151, 1153-54 (9th Cir. 2017). The Ninth Circuit has held that if an ALJ does this, the ALJ thereby "indicates that he or she did not properly 'incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as [he or she] is required to do." *Laborin,* 867 F.3d at 1154 (citing *Trevizo*, 862 F.3d at 1000 n.6 and *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) (holding that this boilerplate language conflicts with the regulations and rulings)). This practice "inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only *then* to determine the claimant's RFC." *Laborin,* 867 F.3d at 1154 (quoting *Trevizo*, 862 F.3d at 1000 n.6.) (emphasis in original).

In assigning great weight to a portion of an opinion because it is consistent with the RFC, the ALJ in this case has committed essentially the same error the Ninth Circuit identified in *Laborin*. The ALJ's task is to assess an RFC based on the available medical evidence, not to evaluate the consistency of that evidence with an already-determined RFC.

The ALJ also erred in assigning little weight to Dr. Patterson's opinion that Plaintiff would not be able to reach overhead at work. The ALJ reasoned that this portion of Dr. Patterson's opinion was inconsistent with Dr. Arroyo's treatment notes showing her shoulder range of motion was grossly intact.

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 9

Here, the matter of who rendered the opinion in question becomes relevant. The Appeals Council ordered the ALJ to correctly attribute the medical opinion to Jeffery Patterson, M.D. rather than Julian Arroyo, M.D. AR 922. The ALJ's decision to give partial weight to Dr. Patterson's opinion, "regardless" of whether it was rendered by Dr. Patterson or Dr. Arroyo, runs contrary to the Appeals Council's instructions and is problematic, since the same reasoning would not necessarily apply both physicians. For example, if Dr. Arroyo had been the author of the estimate of physical capacities dated March 11, 2010, the inconsistency of Dr. Arroyo's examination findings with his assessment of functional limitations would potentially serve as a valid reason for rejecting his opinion. *See e.g. Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of internally inconsistent medical opinion). Given that Dr. Patterson was the author of this opinion, and since his assessment of functional limitations was consistent with the results of his examination, this reasoning is far less persuasive as applied to Dr. Patterson.

Yet, for the reasons discussed above, the ALJ erred in finding that Dr. Patterson's opinion concerning Plaintiff's shoulder limitations was inconsistent with the results of his own evaluation. Since Dr. Patterson's estimate of Plaintiff's physical capacities is simply a more detailed assessment of Plaintiff's functional limitations stemming from Dr. Patterson's March 11, 2010 evaluation, the ALJ also erred in evaluating this part of Dr. Patterson's opinion.

2. Dr. Arroyo and Dr. Morris

Plaintiff next contends that the ALJ failed to properly assess opinions from examining physicians Dr. Julian Arroyo and Dr. William Morris. Dkt. 10, pp. 9-12. As this case is being reversed and remanded for an award of benefits based on the errors regarding the medical

opinion of Dr. Patterson, the Court declines to consider whether the ALJ erred in consideration of the remaining medical opinions.

### B. Whether the ALJ relied on an improper "sit and squirm" test

Plaintiff argues that the ALJ improperly relied upon a "sit and squirm" test in discounting Plaintiff's allegations concerning her shoulder impairment. Dkt. 10, p. 16. Plaintiff alleges that the ALJ essentially copied observations of Plaintiff made during the 2012 hearing and applied them to the revised 2017 decision. Dkt. 10, pp. 16-17. As noted by the Ninth Circuit, the "sit and squirm" jurisprudence "has been condemned." *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (citation omitted). "Denial of benefits cannot be based on the ALJ's observation of [Plaintiff], when [Plaintiff]'s statements to the contrary [] are supported by objective evidence." *Id.* (citing *Coats v. Heckler*, 733 F.2d 1338, 1341 (9th Cir. 1984)).

In her hearing decision dated February 22, 2017, the ALJ relied upon observations of Plaintiff made during the 2012 hearing, noting that:

> At the 2012 hearing, the claimant testified that she was unable to work because of her impairments. She testified she had carpal tunnel syndrome and dropped things. At the 2012 hearing, however, she had no problems manipulating a small hearing aid in and out of her ear. **She testified that she had limitations on driving because of her neck. However, at the 2012 hearing, she was very animated and moved her head from side to side**. She testified that she had a hard time hearing people due to hearing loss. However, at the 2012 hearing, she responded appropriately to questions even after she took her hearing aid out of her ear. **She testified that her shoulders ached and did not have strength. She testified that she could not raise her arms above her head, and then she raised her arms above her head to demonstrate what she claimed she could not do. She also gestured with her hands, and held out her arms in front of her above the table.**

AR 823 (emphasis added). The ALJ's conclusions are virtually identical to those contained in the 2012 hearing decision. AR 30-31. For reasons discussed above, the ALJ erred in evaluating opinion evidence related to Plaintiff's shoulder limitations; consequently, the ALJ erred in

1 finding that Plaintiff is not disabled, since Plaintiff's allegations are supported by objective
2 evidence.

3 Further, the ALJ's decision to rely on this "sit and squirm" test as a reason to discount
4 Plaintiff's allegations runs contrary to the remand order of the Appeals Council. In assessing the
5 ALJ's 2012 decision, the Appeals Council specifically noted that the brief observation of the
6 claimant's use of her arms at the hearing did not necessarily constitute substantial evidence in
7 support of rejecting Dr. Arroyo's opinion. AR 921-22. Similarly, the ALJ's observations during
8 a "sit and squirm" test cannot serve as a specific, clear, and convincing reason for rejecting
9 Plaintiff's testimony concerning the severity of her shoulder symptoms. *See Ghanim v. Colvin*,
10 763 F.3d 1154, 1163 (9th Cir. 2014).

### C. Whether the ALJ properly evaluated activity prescription forms

Plaintiff alleges that the ALJ "completely ignores" a series of activity prescription forms completed by Dr. Arroyo, Dr. Morris, and Lindsay Rades, PAC for the Department of Labor and Industries in connection with Plaintiff's worker's compensation claim. Dkt. 10, p. 12, AR 1339-53. Plaintiff alleges that the restrictions contained in these forms were much greater than those contained in the RFC and should have been considered by the ALJ as part of the medical record. *Id.*

The activity prescriptions forms cover the period between November 2008 and March 2011. In these forms, Dr. Arroyo and Ms. Rades assessed Plaintiff as either being able to "seldom" work above shoulder level (meaning between 0 and 10 percent of the time) or being completely unable to work above her shoulders. AR 1339-53. The ALJ mentioned these activity prescription forms when the ALJ considered the opinions of Dr. Arroyo, Dr. Morris, and Ms. Rades. AR 829. These forms were completed in the context of a worker's compensation claim and assess a series of temporary restrictions covering two and three-month periods. Nevertheless,

these forms provide detailed highly relevant information about Plaintiff's functional capacity during the period at issue, including reaching limitations consistent with a finding of disability, and should have been considered more carefully.

### D. Whether the ALJ erred in finding Plaintiff capable of performing her past work

Plaintiff alleges that the RFC hypothetical posed to the vocational expert ("VE") during the most recent hearing was "slightly different" from the RFC ultimately included in the hearing decision.[1] Dkt. 10, p. 12. Plaintiff contends that the ALJ utilized VE testimony from the 2012 hearing to find Plaintiff capable of performing her past work. *Id.* Plaintiff argues that in relying on this testimony, the ALJ found Plaintiff could perform her past work only as it is described in the Dictionary of Occupational Titles ("DOT"), since the VE in the most recent hearing testified that Plaintiff's past work as a realtor has evolved over the years and no longer exists as described in the DOT. *Id.* at 12-13. Plaintiff contends that when the limitations assessed by Drs. Arroyo and Morris were posed to the VE, all work was eliminated. *Id.* at 13.

In its remand instructions, the Appeals Council directed the ALJ to perform a more detailed step four evaluation, noting that the 2012 hearing decision found that Plaintiff:

> could perform her past relevant work as a real estate agent as generally and actually performed. While the hearing decision noted that the vocational expert testified that the claimant performed her past work as it is generally performed, it did not make a finding of fact as to the physical and mental demands of her past relevant work. The hearing decision also does not discuss the varying accounts of the claimant's past work, including the claimant's own statements or the Washington State Department of Labor and Industry report on the claimant's past work. For example, the report by the Washington State Department of Labor and Industry classified the claimant's past work as medium, which would exceed the claimant's residual functional capacity. In addition, the real estate agent as

---

[1] The primary difference between the hypothetical posed to the VE and the RFC included in the 2017 hearing decision is the hypothetical posed to the VE includes a limitation to occasionally reaching above shoulder level with the bilateral upper extremities. AR 863. The VE testified that given such a limitation, there would not be a significant number of jobs in the national economy Plaintiff could perform. AR 863-64. The RFC also includes a restriction involving frequent kneeling not included in the hypothetical posed to the VE. AR 822.

> generally performed requires frequent reaching, which is also inconsistent with the opinions of Drs. Arroyo, Stevick, and Ignacio.

AR 922 (internal citations omitted).

At step four of the sequential evaluation, the ALJ found that Plaintiff would be able to perform her past relevant work as a realtor as described in the DOT. AR 831. The ALJ took testimony from vocational expert Kelly Hember, who testified that Plaintiff's job was classified as light work in the DOT, but was actually performed at the medium exertional level. AR 862-63. Ms. Hember relied upon the above referenced job analysis completed in May 2010 by the Washington State Department of Labor and Industries. AR 864. Ms. Hember also testified that the job of realtor had become <u>more demanding</u> than described by the DOT, and was more consistent with the job analysis conducted by the Washington Department of Labor and Industries. AR 465-67, 865.

The ALJ opted to reject Ms. Hember's testimony in favor of the 2012 hearing testimony of vocational expert Heidi Trisler, who classified Plaintiff's past work as a light job and testified that given the identical RFC contained in the 2017 decision, Plaintiff would be able to perform her past relevant work as a real estate sales agent. AR 73-75, 831-32.

The ALJ did not follow remand instructions from the Appeals Council, which stated that Plaintiff's job as generally performed requires frequent reaching. According to the Selected Characteristics of Occupations ("SCO"), a detailed companion volume to the DOT published by the US Department of Labor, Plaintiff's past work as a real estate sales agent requires frequent reaching, which the SOC defines as "[e]xtending hand(s) and arm(s) in any direction." *See* U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Part A (1993) at 354; Appendix C-3. The classification of Plaintiff's past work in the SCO is consistent with the testimony of vocational expert Kelly Hember, who

testified at the second hearing that Plaintiff's job as a realtor "does involve lifting open house signs, and so forth." AR 865.

The ALJ did not even consider evidence showing Plaintiff could not perform the job of leasing agent, residence, cited by the ALJ in her alternate step five findings, given that this job also requires frequent reaching. AR 833; U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Part A (1993) at 354; Appendix C-3.

### E. Whether the RFC adequately accounted for Plaintiff's impairments

Plaintiff maintains that the ALJ failed to sufficiently account for the limitations caused by her other impairments when assessing the RFC. Dkt. 10, pp. 14-16. For the reasons discussed above, substantial evidence supports the existence of the reaching limitations assessed by Dr. Patterson. Because this finding precludes Plaintiff from performing work at steps four and five, and merits a finding of disability, the Court declines to address this argument in greater detail.

### F. Whether this case should be remanded for an award of benefits

Plaintiff argues that the ALJ erred and that Plaintiff should be found disabled. Dkt. 10, p. 17. The Court interprets this as a request to remand this case for an award of benefits. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

The ALJ did not provide specific, legitimate reasons for rejecting the opinion of Dr. Patterson. Crediting Dr. Patterson's opinion as true, Plaintiff was unable to reach above shoulder level at work. Given this limitation, Plaintiff was unable to perform her past work at step four of the sequential evaluation and was also unable to perform the job cited by the ALJ in her alternative step five finding. As such, on remand, the ALJ would be required to find Plaintiff disabled at step five of the sequential evaluation. There are no outstanding issues which must be resolved, the record does not require further development, and remand for further administrative proceedings would serve no useful purpose. A remand for an award of benefits is warranted.

## V. CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred in finding plaintiff to be not disabled. Defendant's decision to deny benefits is therefore REVERSED and this matter is REMANDED for an award of benefits.

Dated this 21st day of August, 2019.

Theresa L. Fricke
United States Magistrate Judge